417 F.2d 65
 Theodore R. SAYERS and Peter Gettinger, composing the sole
general partners doing business under the firm
name of Forsyth Building Company, et
al., Plaintiffs-Appellants,
v.
FORSYTH BUILDING CORPORATION, Defendant-Appellee.
 No. 26664.
 United States Court of Appeals Fifth Circuit.
 Sept. 22, 1969.
 
 Charles E. Watkins, Jr., Hugh M. Dorsey, Jr., Atlanta, Ga., Hansell, Post, Brandon & Dorsey, Atlanta, Ga., of counsel, for appellants.
 B. D. Murphy, George G. Finch, T. M. Smith, Sr., Atlanta, Ga., Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for appellee.
 Before JOHN R. BROWN, Chief Judge, GODBOLD, Circuit Judge, and CABOT, District Judge.
 CABOT, District Judge:
 This is an interlocutory appeal by the partnership plaintiff from orders of the District Court of the Northern District of Georgia directing the parties to adjudicate certain issues in this case in the state court action which was at the time pending in Georgia, and also restraining the parties from proceeding further with a real property arrangement under Chapter 12 of the Bankruptcy Act, Title 11, U.S.C., Chapter 12, then pending in the Southern District of New York.
 The actions pending in the district court below and in the state courts of Georgia, as well as in the district court, bankruptcy division, of the Southern District of New York, involve the common question of the validity and effect of a judgment obtained in the Civil Court of Fulton County, Georgia, by Forsyth Building Corporation, the defendant below, against one Cortan Realty Corp., the predecessor in title of the partnership plaintiff below. The suit out of which this judgment arose alleged an unspecified default under a security deed given by Cortan to Forsyth embracing property known as the Forsyth Building in Atlanta, Georgia, and securing a debt of $522,500. The judgment was made a special lien on the Forsyth Building property.
 The questions to be decided in this appeal are whether the district court erred in directing the parties to adjudicate in the state court the validity and effect of the state court judgment, and in restraining the parties from further litigating the Chapter 12 real property arrangement then pending in the Southern District of New York. The basic question involves whether the abstention doctrine was properly invoked by the district court. We conclude that it was not and that the district court erred in not proceeding with the disposition of the controversy.
 I.
 JURISDICTION
 The district court specifically declined to make the findings necessary for an interlocutory appeal under 28 U.S.C. 1292 in this diversity action, but they are not necessary to the jurisdiction of this court since the orders of July 23, 1968, and August 19, 1968, are injunctive in nature. Thus jurisdiction is clearly invoked under 28 U.S.C. 1292(a)(1). Appellee's motion to dismiss was denied by another panel of this court by order filed September 26, 1968, and the same order granted appellant's motion for stay pending appeal.
 II.
 THE PARTIES
 The appellants here, plaintiffs below, are Theodore R. Sayers and Peter Gettinger, both citizens of New York, composing the sole general partners doing business under the firm name of Forsyth Building Company, a New York limited partnership, with principal office in New York City (partnership). The general partners have only a three per cent ownership interest in the partnership, but are liable for its debts. The Commonwealth United Corporation, a limited partner not liable for its debts, has a 97% Ownership interest in the partnership.
 The appellee here, defendant below, is Forsyth Building Corporation, a Georgia corporation, with principal place of business in Atlanta, Georgia.
 The other plaintiffs below, not parties to this appeal, are Drew Operating Corporation, a Delaware corporation (Drew), and Delta Investing Corp., a New York corporation (Delta), both of which maintain their principal place of business in the same office in New York City.
 Drew and Delta are also sometimes referred to as 'long-term lessees.' The partnership and the long-term lessees are also sometimes referred to as the plaintiffs, as they were designated in the court below.
 III.
 BACKGROUND[1]
 Prior to October 30, 1959, the defendant was the equity owner of the Forsyth Building of Atlanta, Georgia, (the property) which is a nine-story business building, used in part for offices, in part for garage and parking, and in part by the Dinkler Hotel as a coffee shop. It was originally built in 1910, remodelled in 1929, and was 54 years old when this litigation was begun in 1964.
 On October 30, 1959, the defendant sold its equity in the property to Cortan Realty Corp., a New York corporation, subject to an existing deed[2] to New England Mutual Life Insurance Company, given by defendant corporation in 1950 to secure a note and indebtedness in the original principal sum of $600,000, with a then unpaid principal balance of $352,500, bearing interest at four per cent per annum, which had been paid to October 1, 1959. The conveyance was also subject to a separate assignment of the rents from the building, which assignment had been given to New England Mutual at the same time.
 In connection with the sale, a second security deed was given by Cortan Realty to defendant, securing part of the purchase money and also evidenced by a promissory note, in the amount of $522,500, principal unamortized and payable in full on or before October 30, 1979, with interest at five per cent per annum, payable monthly.[3]
 The same day, October 30, 1959, Cortan Realty conveyed its equity in the property to the partnership, subject to the two security deeds, the rent assignment, and existing tenancies and leases. The partnership did not assume nor agree to pay either indebtedness, but subsequently made payments on both.
 Also on the same day, the partnership, as lessor, leased the property back to Cortan Realty, as lessee. This lease was for a term of 21 years ending October 30, 1980, with options to renew for three successive terms of 21 years each. It provided for a rental of $97,150 per annum, payable monthly in advance, with certain variations the first year. This lease is referred to as 'the long-term lease.'
 The second security deed included a covenant requiring the grantor 'to keep the premises * * * in as good condition as now exists, natural wear and tear excepted * * *' as well as a standard acceleration clause in the event of default. The long-term lease imposed this obligation in even stronger terms on the lessee, Cortan Realty.
 The lessee's interest in the long-term lease was transferred by mean assignments to Drew, which was charged with the obligation of operating and maintaining the property for the period of August 1, 1961, to March 26, 1964. On this latter date Drew assigned its interest to Delta, which then had the obligation of operating and maintaining the property until a court-appointed receiver assumed control of it, as will later more fully appear.
 IV.
 NON-JUDICIAL ENFORCEMENT
 By newspaper publication beginning April 8, 1964, the defendant advertised the property for sale because of an unspecified default in the terms of the second security deed. In this non-judicial enforcement procedure, no notice was given to the partnership, which was the equity owner and long-term lessor, nor to the long-term lessee, since they were not parties to the second security deed. Notice to Cortan Realty, grantor in the second security deed, was given to its surviving trustees since Cortan Realty had long since been dissolved.
 Both the partnership equity owner and the long-term lessee, upon learning that the property was being advertised for sale for failure to keep the property in proper repair, inquired of Samuel Rothberg, president and controlling stockholder of defendant corporation,[4] as to what particular condition existed or repairs were needed and offered to remedy any condition if it was justified. Defendant admits that Rothberg stated that he was not interested in repairs but was upset because the partnership proposed refinancing the first security deed indebtedness on terms that disturbed him.
 V.
 DISTRICT COURT INJUNCTION
 Thereafter, on April 27, 1964, the partnership equity owner and the long-term lessees, Drew and Delta, brought an action against defendant Forsyth Building Corporation in the United States Court, Northern District of Georgia, the action out of which this appeal arose, seeking to enjoin the alleged illegal enforcement sale of the property scheduled for May 5, 1964, and seeking damages therefor. By agreed order of that court dated May 1, 1964, the sale was enjoined. On May 21, 1964, also by agreement, the injunction was continued in force until the trial of the issues and further order of the court, and the injunction was extended to enjoin any further proceedings by defendant to foreclose its security deed.
 An answer was filed by the defendant on May 15, 1964, and thereafter the controversy between the parties over the property shifted to the state courts of Fulton County, Georgia, where a series of suits were filed.
 VI.
 STATE COURT ACTIONS
 On June 19, 1964, the first security deed and the promissory note secured thereby were transferred by New England Mutual Life Insurance Company to Citizens and Southern National Bank[5] and thereafter to Samuel Rothberg. On January 8, 1965, Rothberg declared a default in the first security deed and indebtedness, allegedly for non-payment of the installment due six days earlier, and on January 19, 1965, began a suit (No. 102835) to enforce the debt in the Civil Court of Fulton County, against his own corporation, the defendant herein, and without notice to these plaintiffs, who had been making the mortgage payments for some years. No answer was filed by defendant and a default judgment was entered for $245,000 principal, $13,502.23 interest, and $25,850.22 attorney's fees, and the judgment was made a special lien upon the property.
 Prior to the entry of this default judgment, the partnership, as equity owner of the property brought a suit in the Superior Court of Fulton County attempting to enjoin prosecution of the enforcement suit (No. 102835). The injunction was denied and on appeal the Supreme Court of Georgia affirmed, holding that the partnership's rights were not affected since it was not a party to the suit.[6]
 In July, 1965, Samuel Rothberg brought suit (No. B-14606) against Forsyth Building Corporation in Superior Court of Fulton County, seeking appointment of a receiver for the rents of the property, and a receiver was appointed. The receiver began collecting the rents and thereafter the partnership intervened in the suit. Later on December 1, 1965, the receivership was enlarged to include the Forsyth Building.
 In the meantime, Forsyth Building Corporation, on August 18, 1965, filed suit (No. 128879) in the Civil Court of Fulton County against Cortan Realty Corp., without notice to plaintiffs, alleging an unspecified default in the terms of the second security deed.[7] A default judgment was entered against Cortan, which had been dissolved in the State of New York five years before, for $522,500 principal, and $52,250 attorney's fees, and the judgment was made a special lien against the property subject to the lien of the judgment in favor of Samuel Rothberg arising out of the first security deed.
 Subsequently, Rothberg, by amendment in the receivership suit (No. B-14606), and joined by Forsyth Building Corporation, petitioned for sale of the property to satisfy the judgments. Then the controversy shifted back to the district court below.
 VII.
 BACK TO THE FEDERAL DISTRICT COURT
 The proposed sale in the state receivership suit (No. B-14606), to which the partnership had become a party by intervention, was then enjoined by the district court on December 9, 1965, upon application of the plaintiffs.
 Thereafter, the partnership, on December 20, 1965, brought a petition, also in the district court to, remove the receiver ship case and seeking to realign the parties according to their true interests, thus invoking the court's diversity jurisdiction. The district court remanded.
 
 
 1
 Then on January 17, 1966, the plaintiffs amended the complaint in this action to allege a conspiracy on the part of Samuel Rothberg and his corporation, the defendant, to defraud the plaintiffs by unlawfully declaring a default in the indebtedness underlying the second security deed and by filing and prosecuting the previously described state court suits involving the property, which it alleges are collusive. Thus, the proposed refinancing of the indebtedness underlying the first security deed would be inhibited and Rothberg would collect the sum due under the first security deed much earlier than the repayment schedule provided. Plaintiffs thereby seek to have the special liens on the property declared void, and also seek additional damages, including punitive damages. Defendant's answer of January 28, 1966, denied the material allegations.
 
 
 2
 On April 8, 1966, defendant filed a motion for summary judgment on the ground that this action had been rendered moot by (1) the default judgments entered by the state courts, and by (2) the fact that the property was then in the hands of a state court receiver and all questions concerning it were thus removed from consideration of all other courts. By its order filed August 18, 1966, the district court held as to the first ground that the state court judgments did not moot the federal court questions, since the plaintiffs were not parties to those actions, were not bound by the judgments and could thus litigate the questions relating to the propriety of the enforcement suit, but that, as to the second ground, the state court had first acquired possession of the property through its receiver and to prevent unseemly conflicts between state and federal courts, the state court retain possession. The 'injunction previously issued by this court' was then dissolved so that the parties might proceed in the state court. Partial summary judgment was entered for the defendant 'in regard to those allegations and prayers of the complaint which relate to the issuance of an injunction,'[8] but denied as to all other issues.
 
 VIII.
 ON TO THE BANKRUPTCY COURT
 
 3
 About two months later the federal district court, Southern District of New York, in response to the New York partnership's petition in a real property arrangement proceeding instituted under Chapter 12 of the Bankruptcy Act[9] by referee's order filed October 18, 1966, assumed jurisdiction of the property and enjoined the parties to this action, along with Rothberg and the state court receiver, from proceeding in any court or interfering with the property.
 
 
 4
 Thereafter, the referee on November 23, 1966, directed the state court receiver to turn over to the clerk of the bankruptcy court some $110,000 in rents collected on the building by him. On February 16, 1967, the referee directed the state court receiver to turn over to the debtor (the partnership) the Forsyth Building and all funds in his hands. However, neither of these orders was complied with by the receiver, who has continued to collect the rents and manage the property. The latter order also restrained all persons from transferring or interfering with the property of the debtor and from instituting or continuing any proceedings relative to the property. But this order was later specifically modified to authorize the partnership to prosecute the district court action involving the property in the Northern District of Georgia.
 
 
 5
 Rothberg and Forsyth Building Corporation filed a motion to dismiss before the referee on the ground that there was no possibility of any plan of arrangement being accepted since they represented more than two-thirds in amount of the secured creditors, objected to the proposed plan of arrangement, and would continue to object to any plan except one providing for the payment of the full amounts of the judgments rendered in their favor by the Georgia state courts. This motion was not ruled on by the referee.
 
 
 6
 A petition for review of the referee's turnover order of February 16, 1967, and of the referee's failure to grant the motion to dismiss was then filed by Rothberg and Forsyth Building Corporation. The bankruptcy judge, by order of July 14, 1967, denied the petition with respect to the motion to dismiss since it was then pending before the referee and review was plainly immature. With regard to the turnover order, the court held that the referee had failed to make findings which reflected the sound exercise of his discretion, and remanded the matter to the referee 'for consideration and determination in his sound discretion of the scope and content of whatever turnover order should be made in this case, and the limitations, restrictions, terms, and conditions to be prescribed. * * *' The turnover order was stayed pending such consideration and determination by the referee.
 
 
 7
 Thereafter, on November 21, 1967, the referee entered an order specifically authorizing the partnership to conduct and carry to final conclusion this action in the district court for the Northern District of Georgia. And by order of April 11, 1968, the referee again restrained all persons, including Rothberg and Forsyth Building Corporation, from proceeding with the litigation then pending in the Superior Court of Fulton County, Georgia.
 
 IX.
 
 8
 FURTHER PROCEEDINGS IN DISTRICT COURT; ORDERS APPEALED
 
 
 9
 The district court below, pursuant to defendant's motion to partially dismiss, entered an order on March 13, 1968, later modified on March 28, 1968, and May 13, 1968, which is the basis of part of this appeal.[10] The court, though denying the motion held that the controlling question in the New York real property arrangement, as well as in this action, concerned the validity and effect of the default judgment entered in the second security deed enforcement proceedings by the Civil Court of Fulton County in favor of the defendant and against Cortan. This appears to be correct because if the default judgment for the defendant and the resulting special lien against the property are valid, then the property is subject to enforcement proceedings to satisfy the judgment debt and the availability of the property as an asset in the Chapter 12 proceeding in New York would thus be effectively removed. And, of course, the validity of the judgment lien is central to plaintiffs' charges of conspiracy to defraud as contained in the complaint.
 
 
 10
 The other part of the appeal arises from the district court's order of July 23, 1968, which restrained the parties on motion of the defendant from proceeding further in the Chapter 12 proceeding in New York until the questions in this action and in the Superior Court of Fulton County, Georgia, had been determined. The court also again affirmatively directed the parties to proceed to adjudicate the questions in the Superior Court. On August 20, 1968, the district court denied plaintiffs' motion for reconsideration, and in addition, denied plaintiffs' request that the court certify this case for an interlocutory appeal under 28 U.S.C. 1292(b). This appeal followed.
 
 X.
 THE ABSTENTION DOCTRINE
 
 11
 The first question to be decided is whether the district court erred in directing the parties to adjudicate in the Superior Court of Fulton County, Georgia the validity and effect of the default judgment entered in the Civil Court of Fulton County in favor of defendant and against Cortan. The order is an affirmative direction to the parties to adjudicate the issue in the state court and it is clear that the lower court has declined to exercise its jurisdiction in favor of resolution of the issue in the state court. Thus, we are dealing basically with an order of abstention, although the appellant has stated six different issues for determination.
 
 
 12
 There can be no doubt that abstention by a federal court when it has jurisdiction, in favor of resolution of the issues by a state court serves a useful and salutary function in a proper case. Wright, Federal Courts 52. Such cases fall generally into the following categories: (1) The first and most important is commonly known as the Pullman doctrine, after its founder, Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). That case and its progeny stand for the rule that a federal court may stay proceedings before it pending litigation in state courts of questions of state law where decisions on federal constitutional questions may thereby be rendered unnecessary. (2) The second abstention doctrine recognizes that federal courts should in the interest of comity and to avoid needless conflict defer to the state courts when basic questions of state policy, such as regulatory legislation, are involved. Burford v. Sun Oil Company, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1942); Alabama Public Service Comm. v. Southern Rwy. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).
 
 
 13
 This action falls into neither category. It involves issues of state law not coupled with any constitutional or other federal question. Nor does it involve any basic state policy consideration calling for the exercise of comity. There is not even a suggestion that the issues of state law are novel or unsettled, nor that they are exceptionally difficult or complex. Even if that were true, the Supreme Court has held in a leading case that such reasons are insufficient to invoke abstention:
 
 
 14
 But we are of the opinion that the difficulties of ascertaining what the state courts may hereafter determine the state law to be (that situation is not involved in this case) do not in themselves afford a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case which is properly brought to it for decision. * * * In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its nonexercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction has been properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment. (Citing cases). When such exceptional circumstances are not present, denial of that opportunity by the federal courts merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of the jurisdictional act. Meredith v. City of Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943).
 
 
 15
 The Supreme Court has continued to follow the holding in Meredith. McNeese v. Board of Education for Community Unit School District 187, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). This court has also recognized this principle in recent cases. American Universal Insurance Co. v. Chauvin, 329 F.2d 174 (5 Cir. 1964); Akin v. Louisiana National Bank of Baton Rouge, 322 F.2d 749 (5 Cir. 1963).
 
 
 16
 The jurisdiction of the district court in this action was properly invoked before any other case was filed involving this property, and absent the most compelling reason the plaintiffs have a right to have the case adjudicated in the federal system. McClellan v. Carland, 217 U.S. 268, 281, 282, 30 S.Ct. 501, 504, 505, 54 L.Ed. 762; Franklin Life Insurance Co. v. Johnson,157 F.2d 653 (10 Cir. 1946); In re President and Fellows of Harvard College,149 F.2d 69 (1 Cir. 1945). It is the duty of a district court to interpret state law and apply it in diversity cases. Erie R. Co. v. Tompkins,304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 17
 In addition, the state court is not the proper forum to determine the issues for a variety of reasons: (1) The issues in this action in the district court involving the alleged conspiracy to defraud plaintiffs by Rothberg and Forsyth Building Corporation are not embraced within the Superior Court receivership suit nor any other state court action, as is the narrower question of the validity and effect of the default judgment of the Civil Court of Fulton County in the second security deed enforcement action; (2) The partnership appears in the receivership action only as an intervenor with an intervenor's limited rights in interjecting new matter; (3) The long-term lessees, Drew and Delta, who had the primary obligation to maintain the property are not parties to the state court litigation; (4) The state court receivership action has long been dormant under restraining order of the bankruptcy division of the Southern District of New York, as well as the earlier restraining order of the lower court in this action; (5) Even if the broad conspiracy issues of the district court were made issues in and determined by the state court, there would still remain the damage question to be determined in the district court, in the event the plaintiffs here should prevail in the state court.
 
 
 18
 The court below has no power to control the course of the litigation in the state court. Moreover, it is apparent that referral of the limited issue to the state court will not expedite the completion of this litigation which is now more than five years old. The district court is the proper forum to untangle the complex web which has resulted from the differences between the parties. The failure of the court to exercise its jurisdiction and settle the controversy is error.
 
 XI.
 STAY OF REAL PROPERTY ARRANGEMENT
 
 19
 The second question for determination concerns the propriety of the lower court's order restraining the parties from proceeding further in the Chapter 12 real property arrangement in the bankruptcy division of the Southern District of New York. It is basic law that a court may take such steps as are necessary to protect its jurisdiction. This appears to be such a case. As the lower court recognized, the resolution of the issues before that court has a material bearing on the issues before the New York bankruptcy court; that is, as earlier discussed, if the default judgment and resulting lien are valid, then the property would not be available as an asset in the Chapter 12 proceeding.
 
 
 20
 Furthermore, if the litigation in both courts should proceed simultaneously, varying adjudications might result on the same point; that is, the availability of the property as an asset in the Chapter 12 real property arrangement. Thus, it is desirable for the lower court to conclude its litigation on the point prior to the determination on the same point in the Southern District of New York.
 
 
 21
 Fortunately, we may also consider the happy circumstance that such a procedure was approved by the New York court when it specifically authorized the partnership to employ counsel and prosecute this action in the Northern District of Georgia to conclusion.
 
 
 22
 Therefore, it is apparent that the lower court did not abuse its discretion in protecting its jurisdiction by restraining the parties from proceeding further in the Chapter 12 real property arrangement.
 
 
 23
 Affirmed in part; reversed in part, and remanded for further proceedings not inconsistent with this opinion.
 
 JOHN R. BROWN, Chief Judge (concurring):
 
 24
 I concur in the result and all of the articulate and extended opinion except what I regard to be an over adulation of Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9. Phrasing the problem of abstention in diversity cases in the stringent language of Meredith ignores too much the proposition that determining whether to abstain is judicial travail of the most exacting nature. While it is one thing to abdicate a function or duty, there is none of this when, after careful analysis the interest of good administration and respect for the State's exclusive power to determine what its law will be, the Federal Court reaches the conclusion that State judicial resources should first be exploited. The Court has done this frequently, most notable of which is the frequent use of the Clay-Florida[1] certification proceeding, the efficiency of which has often been extolled by this Court.[2] As pointed out in W. S. Ranch Co. v. Kaiser Steel Corp., 10 Cir., 1967, 388 F.2d 257, 264-265 (dissenting opinion), which was reversed by the Supreme Court in its direction that, in that New Mexico diversity case between private parties, the Federal Court stay its hand pending determination of a declaratory judgment action filed in the New Mexico Courts after the decision of the Court of Appeals, Kaiser Steel Corp. v. W. S. Ranch Co., 1968, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835, the Supreme Court of Florida has several times saved us from serious error by expressly rejecting the Fifth Circuit's reading of the Florida law.
 
 
 25
 When we get away from the rhetoric that describes abstention almost in terms of an ignominious shirking of an unpleasant duty, Judge Cabot's opinion for us in items (1) through (5) more than adequately demonstrates why, on the basis of critical analysis, resort to the Georgia Courts would not be in order here.
 
 
 
 [1]
 The facts in this case were taken from the pleadings and orders of the district courts of the Northern District of Georgia and the Southern District of New York, in bankruptcy, as appear in the record. The records from the state courts were not furnished on this appeal
 
 
 [2]
 A security deed, also sometimes variously described as a 'deed to secure a debt,' 'loan deed,' 'deed to secure a loan,' 'trust deed,' or 'deed of trust,' corresponds under Georgia law to that of a mortgage in many jurisdictions, and is at times also referred to as a mortgage. However, unlike the mortgage concept, in which the mortgagee acquires only a lien, the grantee, or holder of a security deed in Georgia acquires the fee simple title to the property, subject to the right of the grantor, who is known as the equity owner, to reacquire the fee simple title upon satisfying the terms of the security deed. Ga.Code, 67-1301; Shirling v. Hester, 201 Ga. 706, 708, 40 S.E.2d 743
 
 
 [3]
 There is also a third security deed securing a debt in the amount of $245,000 on the property, apparently held by Commonwealth United Corporation, the limited partner, which is not directly involved in this litigation. (Appendix 91.)
 
 
 [4]
 'It also appears that Rothberg is the principal stockholder of and controls the Forsyth Building Corporation.' Recital in order of July 14, 1967, of United States District Court, S.D.N.Y., (Appendix 89, 91)
 
 
 [5]
 It is alleged by the plaintiffs in the amendment to the complaint in this district court action that this June 19, 1964, transfer was a purchase by Samuel Rothberg through Citizens and Southern National Bank
 
 
 [6]
 Reported as Commonwealth United Corp. v. Rothberg, 221 Ga. 175, 143 S.E.2d 741. Plaintiff states in its brief that this suit was mistakenly brought in the name of Commonwealth, a limited partner of the partnership plaintiff
 
 
 [7]
 This is the same security deed which was the subject of the nonjudicial enforcement proceeding, by reason of which this action was originally filed
 
 
 [8]
 This language is quoted from the court's order filed August 18, 1966. It apparently refers to all injunctions previously entered in this action, being the injunctive orders of May 1 and 21, 1964, and December 9, 1965
 
 
 [9]
 Appellant contends in its brief that this action was made necessary because the state court receiver had been collecting the rents on the building for fifteen months but was not allowed to pay the interest on the second security deed indebtedness, nor the taxes on the property
 
 
 [10]
 The part of the order which is objected to is as follows:
 This Court is unable to understand why the parties here cannot obtain any relief to which they may be entitled in the state court. Questions concerning the validity and effect of the aforementioned state court judgment and other state court judgments involving this property should be referred to the state court for consideration and determination. This suit here will not be dismissed since it involves a question of damages which this court should retain, but the equitable question, and questions relating to the validity of the state court judgment and the rights of the parties with repect to the property, are hereby referred to the Superior Court of Fulton County, Georgia, for consideration. (Appendix 104, 105).
 
 
 [1]
 See Clay v. Sun Ins. Office, td., 1960, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, on certification upon remand, Fla., 1961, 133 So.2d 735, on receipt of answers to certification, 5 Cir., 1963, 319 F.2d 505, rev'd, 1964, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229
 
 
 [2]
 E.g., Martinez v. Rodriquez, 5 Cir., 1968, 394 F.2d 156; McDonell v. New England Mutual Life Ins. Co., 5 Cir., 1967, 380 F.2d 983; Greer v. Associated Indemnity Corp., 5 Cir., 1967, 371 F.2d 29; Hopkins v. Lockheed Aircraft Corp., 5 Cir., 1966, 358 F.2d 347