**P. C. UTILITIES CORP., etc., et al.,
Plaintiffs,**

v.

**The DIV. OF HEALTH OF the DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, etc., et al., Defendants.**

**Civ. No. 71–1175.**

United States District Court,
S. D. Florida.

Feb. 23, 1972.

Richard B. Burk, of Scott, Burk, Royce & Kerr, Palm Beach, Fla., for plaintiffs.

William M. Hoeveler, of Knight, Peters, Hoeveler, Pickle, Niemoeller & Flynn, Miami, Fla., for defendant Anderson.

Robert M. Eisenberg, Gen. Counsel, Div. of Health, Jacksonville, Fla., and Kenneth F. Hoffman, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for other defendants.

## ORDER

FULTON, Chief Judge.

This cause came before the Court upon motions to dismiss and to strike filed by defendants Loxahatchee River Environmental Control Board and the Board members, Bill Lund, Charles J. Ingraham, Mrs. James W. Bernhard, Richard .H. Swallow, Samuel Fox, William S. Wood, and by the Department of Air and Water Pollution Control, Vincent D. Patton, and David H. Scott, and upon defendant Charles Anderson's motion to dismiss. These motions were orally argued before the undersigned Judge on December 9, 1971, and the matters raised were taken under advisement for further study and consideration.

In this action plaintiffs are seeking damages and equitable relief. They assert jurisdiction under 28 U.S.C. § 1331, federal question jurisdiction, § 1343, civil rights jurisdiction, and § 2201, Declaratory Judgments Act, and under the Fifth and Fourteenth Amendments to the United States Constitution. The complaint alleges that the defendants, jointly and severally, acting under color of law have conspired to deny the plaintiffs due process of law by failing to act upon certain applications for sewage treatment building permits and failing to grant to plaintiffs a permit or permits to build a sewage treatment and disposal plant in the Loxahatchee River area. Plaintiffs allege that permits are necessary so that plaintiffs may develop and sell their land.

Plaintiffs allege that they have been attempting to obtain a permit or permits to build sewage treatment facilities to service their land since sometime in 1970. There was, at that time and there still is, confusion and uncertainty about what state or municipal agency has the authority to issue such permits. It appears that before 1969 The Florida Department of Health and Rehabilitative Services, Division of Health, had some authority with regard to these permits. The Department was an original plaintiff to this cause but has since been voluntarily dismissed by the plaintiffs. It appears that in 1969 the Division of Air and Water Pollution was created and was given some statutory authority which was formerly possessed by the Department of Health, including authority to pass upon and approve proposed sewage treatment facilities. Counsel for the plaintiffs contends, however, that the Department of Health in fact retained this approval authority after the 1969 creation of the Division of Air & Water Pollution. Then, in 1970 several municipalities in the area, acting under apparent legislative authority, formed the Counsel of Governments (C.O.G.) to jointly approve and build a cooperative disposal plant. One of the plaintiffs apparently made application to C.O.G. to tie into a C.O.G. system, but what authority C.O.G. had to grant this application is still unclear. In any event, the permit was apparently not granted. Finally, in May, 1971, the Loxahatchee River Environmental Control Board was created as a state agency. Apparently this Board has some relationship to C.O.G., because membership of the first Board was selected by C.O.G., with the proviso that subsequent Boards would be elected by the voters. What authority, if any, the Loxahatchee River Board has over sewage matters in this area is also unclear.

Subsequent to the time when one or more of the plaintiffs made individual permit applications to one or more of the above mentioned agencies, the plaintiff Gelden joined with others to form

P. C. Utilities, the alleged purpose of which was to join together individual developers and create a large water and sewer system. After formation of P. C. Utilities, these developers again applied for a permit to build a sewage facility; they made application to the Department of Health, even though it appeared that all Department of Health Authority had been transferred to the Division of Air and Water Pollution. They did so, because, according to plaintiffs' counsel, the Department of Health actually retained this authority. However, this most recent application was apparently referred to the Loxahatchee River Environmental Control Board. That is where the matter appears to stand today.

From this brief and admittedly not entirely clear explanation of the complex factual background of this case, it is immediately apparent that this action concerns multiple and overlapping state and municipal agencies and departments and multiple Florida Statutes and Administrative regulations, and that this case involves the Florida Constitution and the constitutional authority of various state agencies to grant or deny sewage treatment building permits and to coordinate building of the same. As stated, the plaintiffs allege that they have been denied due process and their civil rights have been infringed by the various defendants' inaction—even though no one seems to know who has the authority or duty to act.

Obviously, the heart of this case—who has authority to pass upon plaintiffs' request for a sewage treatment facility building permit and what standards are to be applied in granting or denying such permits—is an uncertain, undecided State question and an important matter of state policy.

Assuming, without deciding, that this Court has jurisdiction over this matter —and that is very dubious—nevertheless, in the last three decades there has been considerable recognition of circumstances under which a federal court may decline to proceed though it has jurisdiction. The cases in which this has been recognized are usually referred to as establishing the "abstention doctrine." C. Wright, Law of Federal Courts, § 52 (2nd ed.) Without doubt, abstention by a federal court in favor of resolution of the issues by a state court serves a useful and salutary function. Such cases generally fall into at least two categories, as outlined by the 5th Circuit Court of Appeals in Sayers v. Forsyth Building Corp., 417 F.2d 65 (5th Cir. 1969).

(1) The first and most important is commonly known as the Pullman doctrine, after its founder, Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). That case and its progeny stand for the rule that a federal court may stay proceedings before it pending litigation in state courts of questions of state law where decisions on federal constitution questions may thereby be rendered unnecessary.

(2) The second abstention doctrine recognizes that federal courts should in the interest of comity and to avoid needless conflict defer to the state courts when basic questions of state policy, such as regulatory legislation, are involved. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1942); Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).

See, also, Edwards v. Sammons, 437 F. 2d 1240 (5th Cir. 1971).

As the Supreme Court said in McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), "where strands of local law are woven into a case that is before the federal court, we have directed a District Court to refrain temporarily from exercising its jurisdiction until a suit could be brought in the state court." On the other hand, when "the cloth of state law is off the loom and there can be no doubt as to what the state law provides, there is no place for abstention." Hall

v. Garson, 430 F.2d 430 (5th Cir. 1970). Recently, the Supreme Court applied the abstention doctrine to a case involving the constitutionality of certain Alaskan fishing laws and regulations. A three-judge federal court declared the laws unconstitutional and enjoined their enforcement. In reversing, the Supreme Court held that:

> the instant case is a classic case in [the Pullman-abstention] tradition, for here the nub of the whole controversy may be the state constitution. The constitutional provisions relate to fish resources, an asset unique in its abundance in Alaska. The statute and regulations relate to that same unique resource, the management of which is a matter of great state concern. . . . we have concluded that the first judicial application of these constitutional provisions should properly be by an Alaska court.

We think the federal court should have stayed its hand while the parties repaired to state court for a resolution of their state constitutional questions.

Reetz v. Bozanich, 397 U.S. 82, 87, 90 S. Ct. 788, 790, 25 L.Ed.2d 68 (1970). See also Reid v. Board of Education, 453 F. 2d 238 (2nd Cir. 1971).

Certainly the most vital question in this lawsuit is not the question of damages or the vindication of some alleged civil right, but who has the authority to grant the permit the plaintiffs seek, under what standards the permit should be considered, and when, if ever, the plaintiffs can build the plant they propose. No one seems to know the answer to these questions—even the Attorney General is unsure. If ever a case called for abstention, this is it. Thereupon, it is

Ordered and adjudged that this cause be and the same is hereby dismissed without prejudice to plaintiffs' right to request that this cause be reinstated in the event the State Courts refuse, upon the filing of a proper petition therein, such as a petition for writ of mandamus, to consider the questions raised or upon a final resolution of State Court litigation if such litigation does not resolve the issue contained in this lawsuit. See Moreno v. Henckel, 431 F.2d 1299, n. 3 (5th Cir. 1970).